1  MARIO N. ALIOTO, ESQ. (56433)
   LAUREN C. RUSSELL, ESQ. (241151)
2  TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP
   2280 Union Street
3  San Francisco, CA 94123
4  Telephone: (415) 563-7200
   Facsimile: (415) 346-0679
5  malioto@tatp.com
   laurenrussell@tatp.com
6
7  JOSEPH M. PATANE, ESQ. (72202)
   LAW OFFICE OF JOSEPH M. PATANE
8  2280 Union Street
   San Francisco, CA 94123
9  Telephone: (415) 563-7200
   Facsimile: (415) 346-0679
10 E-mail: jpatane@tatp.com
11
   *Attorneys for Plaintiff Marin Scotty's Market, Inc.*
12
13              UNITED STATES DISTRICT COURT
14              NORTHERN DISTRICT OF CALIFORNIA
15 MARIN SCOTTY'S MARKET, INC., on    )  Case No. 08 1486 MMC
   behalf of itself and all others similarly situated, )
16                                    )
17        Plaintiffs,                 )  CLASS ACTION COMPLAINT
   vs.                                )
18                                    )
   REDDY ICE HOLDINGS, INC.; ARCTIC   )
19 GLACIER INCOME FUND; ARCTIC        )  **JURY TRIAL DEMANDED**
   GLACIER, INC.; ARCTIC GLACIER      )
20 INTERNATIONAL, INC.; and HOME CITY )
   ICE COMPANY,                       )
21                                    )
22        Defendants.                 )
                                      )
23
24
25
26
27
28

                    1
           CLASS ACTION COMPLAINT

"ORIGINAL FILED MAR 17 2008 RICHARD W. WIEKING CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA"

## CLASS ACTION COMPLAINT

Plaintiff Marin Scotty's Market, Inc. on behalf of itself and all others similarly situated in the United States, brings this action for treble damages and injunctive relief under the federal antitrust laws of the United States against the Defendants named herein, demanding trial by jury, and complaining and alleging as follows:

### NATURE OF THE CASE

1. This lawsuit is brought as a class action on behalf of individuals and entities that purchased packaged cubed, crushed, block and dry ice ("Packaged Ice") in the United States directly from Defendants, their predecessors, or their controlled subsidiaries and affiliates during the period beginning no later than January 1, 2002 and continuing through the present (the "Class Period"). Plaintiff alleges that during the Class Period the Defendants engaged in an international conspiracy for the purpose of fixing prices, allocating markets and territories, and committing other anticompetitive practices designed to unlawfully fix, raise, maintain or stabilize prices for Packaged Ice sold in the United States.

2. Plaintiff alleges that Defendants' cartel and concerted anticompetitive conduct is in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, which prohibits restraints of trade. Plaintiffs seek treble damages and injunctive relief on behalf of themselves and all other similarly situated purchasers of Packaged Ice during the Class Period.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action based on Section 4 of the Clayton Act, 15 U.S.C. §15, which confers to the United States district courts jurisdiction over actions seeking damages and costs, including reasonable attorneys' fees, for violations of the Sherman Act. Section 16 of the Clayton Act, 15 U.S.C. §16, is the basis for this Court's jurisdiction over Plaintiffs' claim for injunctive relief. This Court also has jurisdiction under 28 U.S.C. §1331, which vests the district courts with jurisdiction over actions, such as this one, which arise under federal law, and under 28 U.S.C. §1337, which grants the district courts jurisdiction under the federal antitrust laws.

CLASS ACTION COMPLAINT

4. This Court has personal jurisdiction over Defendants because they systematically and continually conduct business in the United States, including marketing, advertising, and sales directed to residents here.

5. Venue is laid in this District pursuant to 28 U.S.C. § 1391. Venue is proper in this judicial district because during the Class Period one or more of the Defendants resided, transacted business, was found, or had agents in, this district, and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this district, and a substantial portion of the affected portion of the interstate trade and commerce described below has been carried out in this district.

## DEFINITIONS

6. As used herein, the term "Packaged Ice" will mean and include packaged cubed, crushed, block and dry ice.

7. The "Class Period" or "relevant period" means the period from no later than January 1, 2002 and continuing through the present.

8. "Person" means any individual, partnership, corporation, association, or other business or legal entity.

## PLAINTIFFS

9. Plaintiff Marin Scotty's Market, Inc. ("Marin Scotty's") is a California corporation located in Marin, California. During the relevant period, Marin Scotty's purchased Packaged Ice directly from one or more of the Defendants or their co-conspirators and has been injured by reason of the antitrust violations alleged in this Complaint.

## DEFENDANTS

10. Defendant Reddy Ice Holdings, Inc. ("Reddy Ice") is a Delaware corporation with its principal place of business located in Dallas, Texas. Reddy Ice is the largest ice company in North America, recording 2007 sales of $339 million. It has the dominant market position in the U.S. sunbelt states, from Florida to Arizona. Reddy Ice manufactures and distributes ice products including cubed ice, crushed ice, half-moon and cylindrical ice, block ice, and dry ice. Reddy Ice sells approximately 1.9 million tons of ice per year, primarily

1  packaged in seven and ten pound bags, sold principally to convenience stores and supermarkets.
2  Reddy Ice began trading on the New York Stock Exchange on August 12, 2005. Prior to this
3  date, it had been privately held under the name Packaged Ice, Inc. During the Class Period,
4  Reddy Ice manufactured, marketed, sold and distributed Packaged Ice to customers throughout
5  the United States.

6      11.    Defendant Arctic Glacier Income Fund is the Canadian holding company for its
7  operating subsidiary, Defendant Arctic Glacier, Inc. (together "Arctic Glacier"). Arctic Glacier
8  is a business entity organized under the laws of Alberta, Canada with its principal place of
9  business located in Winnipeg, Minnesota. Second to Reddy Ice, Arctic Glacier is the second-
10 largest producer and distributor of packaged ice in North America, with total revenues of $249
11 million for 2007. Of these revenues, more than 80 percent come from its U.S. operations, in
12 which it has dominant market positions in major eastern seaboard cities such as New York and
13 Philadelphia, New England, California and the Midwest. During the Class Period, Arctic Glacier
14 manufactured, marketed, sold and distributed Packaged Ice to customers throughout the United
15 States.

16     12.    Defendant Arctic Glacier International, Inc. ("Arctic Glacier International") is a
17 wholly-owned subsidiary of Arctic Glacier and serves as its operating and holding subsidiary in
18 the United States. Arctic Glacier International is a Delaware corporation with its principal place
19 of business located in West St. Paul, Minnesota. During the Class Period, Arctic Glacier
20 International manufactured, marketed, sold and distributed Packaged Ice to customers
21 throughout the United States.

22     13.    Defendant Home City Ice Company ("Home City Ice") is a privately-held
23 company located in Cincinnati, Ohio. On its corporate website, Home City Ice describes itself as
24 follows:

25
26
27
> Home City Ice retails ice across all of Ohio, Indiana, Illinois, Kentucky, and West Virginia, as well as parts of Michigan, Pennsylvania, Tennessee, New York and Maryland. Home City Ice manufactures 4,400 tons of ice per day in 28 state-of-the-art manufacturing plants, with 36 distribution centers and has a fleet of over 500 trucks to serve the Midwest.

28

**4**
**CLASS ACTION COMPLAINT**

1  During the Class Period, Home City Ice manufactured, marketed, sold and distributed Packaged
2  Ice to customers throughout the United States.

### DEFENDANTS AND CO-CONSPIRATORS

14. Various other Packaged Ice manufacturers, trade associations, persons and/or entities, not named as Defendants herein, have participated as co-conspirators with Defendants and have performed acts and made statements in furtherance of the conspiracy and/or in furtherance of the anticompetitive, unfair or deceptive conduct alleged herein. The allegations in this Complaint apply equally to these unnamed co-conspirators.

15. Whenever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business or affairs.

16. Each of the Defendants named herein acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein.

### INTERSTATE TRADE AND COMMERCE

17. Throughout the Class Period, there was a continuous and uninterrupted flow of Packaged Ice sales in interstate and international commerce throughout the United States.

18. Defendants' unlawful activities, as described herein, took place within the flow of interstate commerce to Packaged Ice purchasers located in states other than the states in which Defendants are located, as well as throughout the world, and had a direct, substantial and reasonably foreseeable effect upon interstate and international commerce, including the United States Packaged Ice market.

### CLASS ACTION ALLEGATIONS

19. Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following class:

All persons and or entities residing in the United States who or which purchased Packaged Ice in the United States directly from one or more of the Defendants at any time during the period from January 1, 2002 through the present. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and, any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local government entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

20. This action has been brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following reasons:

    a. The Class is ascertainable and there is a well-defined community of interest among members of the Class;

    b. Based upon the nature of trade and commerce involved and the number of purchasers of Packaged Ice from Defendants and their co-conspirators, Plaintiff believes that the members of the Class number in the thousands, and therefore are sufficiently numerous that joinder of all Class members is not practicable;

    c. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff purchased Packaged Ice directly from one or more of the Defendants or their co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class;

    d. The following common questions of law or fact, among others, exist as to the members of the Class:

        i. Whether Defendants formed and operated a combination or conspiracy to fix, raise, maintain, and/or stabilize the prices of, or allocate the market for, Packaged Ice sold in the United States during the Class Period;

        ii. Whether the combination or conspiracy caused prices for Packaged Ice to be higher than they would have been in the absence of Defendants' conduct;

        iii. The operative time period of Defendants' combination or conspiracy;

1       iv.     Whether Defendants' conduct caused injury to the business or
2   property of Plaintiff and the members of the Class;
3       v.      The appropriate measure of the amount of damages suffered by
4   the Class;
5       vi.     Whether Defendants' conduct violates Section 1 of the Sherman
6   Act;
7       vii.    Whether Defendants took steps to actively conceal their
8   conspiracy; and
9       viii.   The appropriate nature of class-wide equitable relief.
10      e.      These and other questions of law and fact common to the members of the
11  Class predominate over any questions affecting only individual members, including legal and
12  factual issues relating to liability and damages;
13      f.      After determination of the predominant common issues identified above,
14  if necessary or appropriate, the Class can be divided into logical and manageable subclasses;
15      g.      Plaintiff will fairly and adequately protect the interests of the Class in that
16  Plaintiff has no interests that are antagonistic to other members of the Class and has retained
17  counsel competent and experienced in the prosecution of class actions and antitrust litigation to
18  represent it and the Class;
19      h.      A class action is superior to other available methods for the fair and
20  efficient adjudication of this litigation since individual joinder of all damaged Class members is
21  impractical. The damages suffered by the individual Class members are relatively small, given
22  the expense and burden of individual prosecution of the claims asserted in this litigation. Thus,
23  absent the availability of class action procedures it would not be feasible for Class members to
24  redress the wrongs done to them. Even if the Class members could afford individual litigation,
25  the court system could not. Further, individual litigation presents the potential for inconsistent or
26  contradictory judgments and would greatly magnify the delay and expense to all parties and the
27  court system. Therefore, the class action device presents far fewer case management difficulties
28

7
CLASS ACTION COMPLAINT

1  and will provide the benefits of unitary adjudication, economy of scale and comprehensive
2  supervision in a single court;

3        i.      Defendants have acted, and/or refused to act, on grounds generally
4  applicable to the Class, thereby making appropriate final injunctive relief with respect to the
5  Class as a whole; and

6        j.      In the absence of a class action, Defendants would be unjustly enriched
7  because they would be able to retain the benefits and fruits of their wrongful conduct.

## DEFENDANTS' ANTICOMPETITIVE CONDUCT

9      21.    Throughout the period covered by this Complaint, Defendants and their co-
10  conspirators engaged in the business of marketing and selling Packaged Ice in the United States
11  and elsewhere.

12      22.    Each Defendant possesses significant market share in the United States Packaged
13  Ice market. The principal competitors for the Defendants in the Packaged Ice market are
14  therefore each other.

15      23.    Packaged Ice is a commodity that can be provided by any one Packaged Ice
16  manufacturer, and can be readily substitutable for any other Packaged Ice manufacturer.

17      24.    Defendants are the largest Packaged Ice manufacturers in the United States and
18  North America. Sales of Packaged are approximately $1.8 billion annually. About half of those
19  sales are produced by third-party manufacturers, with the other half produced in-house (ice
20  machines). Sales by Defendants comprise approximately 70% of third-party manufacturers'
21  sales of Packaged Ice.

22      25.    Canada is a major exporter of ice into the United States.

23      26.    Beginning at least as early as January 1, 2002, the exact date being unknown to
24  Plaintiff, and continuing thereafter to present day, Defendants and their co-conspirators
25  engaged in an unlawful conduct, combination or conspiracy with the purpose and effect of
26  fixing prices, allocating markets and committing other anticompetitive practices designed to
27  unlawfully fix, raise, maintain and/or stabilize prices of Packaged Ice in a *per se* violation or
28  unreasonable restraint of trade in violation of Section of the Sherman Act.

27. The Packaged Ice industry has high barriers to entry. The industry has high start-up costs and replacement costs, and many customers carry only one brand of ice and have long term relationships of ten or more years with the manufacturer from whom they purchase Packaged Ice products.

28. During the Class Period, Defendants engaged in illegal, anticompetitive conduct by, *inter alia*, allocating markets so that Defendants were no longer in competition with each other.

29. Defendants' unlawful behavior resulted in the following market division: (1) Reddy Ice has the dominant market position in the U.S. sunbelt states, from Florida to Arizona, and the Northwest; (2) Arctic has a dominant market position in Minnesota, the Central and Northeastern states and California; and (3) Home City Ice has a dominant market position in the Midwest. There is virtually no overlap between the geographic markets in which each Defendant operates. Defendants agreed not to compete head to head in any of the markets in which one of them was dominant. Each region of the U.S. market, as hereinbefore alleged, is controlled by one particular Packaged Ice manufacturer.

30. By engaging in conduct that allocated the market among Defendants, price competition was reduced or eliminated throughout the United States.

31. The Packaged Ice industry is highly seasonal, characterized by peak demand during the warmer months of May through September. Approximately 69 percent of annual revenues occur during this time.

32. Demand for Packaged Ice within specific geographic areas is affected by weather conditions. There is an extended peak selling season in the southern United States, where temperatures remain warm beyond September. Revenues typically increase during particularly hot summers. Cool and/or rainy seasons negatively impact Packaged Ice purchases.

## DEPARTMENT OF JUSTICE INVESTIGATION

33. Gina Talamona, a spokesperson for the Antitrust Division of the United States Department of Justice ("DOJ"), has confirmed that the DOJ is investigating possible anti-competitive practices in the Packaged Ice business.

34. The DOJ investigation follows a complaint made to Canada's Competition Bureau ("Bureau") by Jerry Antoniuk, owner of Polar Ice, an Edmonton, Canada Packaged Ice manufacturer. Antoniuk complained to the Bureau and brought a civil antitrust suit against Arctic Glacier, on of the Defendants here, alleging that Arctic Glacier engaged in strong-arm tactics in the Edmonton geographic area, including "muscling," pricing, and offering kickbacks to Polar Ice's customers. Justice Richard Marceau of Court of Queen's Bench of Alberta awarded Polar Ice $50,000 in damages.

35. Antoniuk says he has been in contact with the U.S. Department of Justice which said it may use court documents from the civil case in its investigation.

36. On or about March 6, 2008, Arctic Glacier issues the following press release:

> Arctic Glacier Income Fund (TSX:AG.UN) today announced that on March 5, 2008, its operating subsidiary, Arctic Glacier, Inc., became aware of the Antitrust Division of the United States Department of Justice is conducting an investigation into possible antitrust issues in the Packaged Ice industry. The company will cooperate with authorities in the course of the investigation.

37. Just prior to this news, Arctic Glacier Income Fund had reported fourth-quarter sales of $36.3 million.

38. Also on or about March 6, 2008, Reddy Ice issues the following additional press release:

> Reddy Ice Holdings, Inc. (NYSE:FRZ) is providing further information to supplement the press release issues on March 6, 2008 regarding the execution of a search warrant at the Company's Dallas corporate office on March 5, 2008. The execution of the search warrant was directed by the Antitrust Division of the United States Department of Justice in connection with an investigation of the packaged ice industry. The Company's board of directors has formed a special committee of independent directors to conduct an internal investigation.
>
> The Company will continue to serve its customers in its normal business manner.

39. Reddy Ice spokeswoman Courtney Birck said that the DOJ did indeed take "various documents and information."

1  40. Between December 1, 2007 and January 3, 2008, both the Chief Operating Officer and Chief Executive Office of Reddy Ice resigned, just prior to the time the DOJ executed its search warrants.

## VIOLATIONS ALLEGED

### First Claim for Relief

### (Violation of Section 1 of the Sherman Act)

41. Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

42. Beginning at a time unknown to Plaintiff, but no later than January 1, 2002, and continuing through the present, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain and/or stabilize the prices for, and allocate markets for, Packaged Ice purchased by Plaintiff and the other Class Members, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

43. In formulating and carrying out the alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including, but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

    a. Agreed to and did in fact fix, raise, maintain and stabilize the prices for Packaged Ice sold in the United States and Canada;

    b. Agreed to and did in fact allocate geographic markets and customers for Packaged Ice sold in the United States and Canada;

    c. Participated in meetings, phone conferences and other communications to exchange information used by Defendants to formulate and implement their contact, combination and conspiracy to fix, raise and maintain prices of Packaged Ice and allocate markets and customers for Packaged Ice in the United States and Canada; and

    d. Signaled and communicated the formulation and implementation of their contract, combination and conspiracy to fix, raise and maintain prices of

1 | Packaged Ice and allocate markets and customers for Packaged Ice in the
2 | United States and Canada.

44. The illegal combination and conspiracy alleged herein has had the following effects, among others:

   a. Price competition in the sale of Packaged Ice has been restrained, suppressed and/or eliminated;

   b. The prices of Packaged Ice sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels; and

   c. Those who purchased Packaged Ice have been deprived the benefits of free and open competition.

45. During the Class Period, Plaintiff and members of the Class purchased Packaged Ice directly from one or more Defendants and their co-conspirators.

46. As a direct and proximate result of Defendants' illegal contract, combination and conspiracy, Plaintiff has been injured and will continue to be injured in its business and property by paying more for Packaged Ice purchased from Defendants and their co-conspirators than they would have paid and will pay in the absence of the combination and conspiracy.

47. Plaintiff and the members of the Class request three times their actual damages that resulted from Defendants' illegal conspiracy to fix, raise, maintain and stabilize the prices for Packaged Ice. The total amount of damages is presently undetermined. Such determination will require discovery.

48. Plaintiffs and the Class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

### FRAUDULENT CONCEALMENT

49. Throughout the relevant period, Defendants affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and the Class.

50. Plaintiff and the members of the Class did not discover, and could not discover through the exercise of reasonable diligence, that Defendants were violating the antitrust laws as

alleged herein until the governmental investigations of their actions were first announced. Nor could Plaintiff and the members of the Class have discovered the violations earlier than that time because Defendants conducted their conspiracy in secret, concealed the nature of their unlawful conduct and acts in furtherance thereof, and fraudulently concealed their activities through various other means and methods designed to avoid detection. The conspiracy was by its nature self-concealing.

51. Defendants engaged in a successful price-fixing conspiracy with respect to Packaged Ice, which they affirmatively concealed, in at least the following respects:

a. By agreeing among themselves not to discuss publicly, or otherwise reveal, the nature and substance of the acts and communications in furtherance of their illegal scheme; and

b. By giving false and pretextual reasons for their Packaged Ice price increases during the relevant period and by describing such increases falsely as being the result of external costs, rather than collusion.

52. As a result of Defendants' fraudulent concealment of their conspiracy, Plaintiff and the Class assert the tolling of any applicable statute of limitations affecting the rights of action of Plaintiff and the members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A. That the Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B. That the Court adjudge and decree that the unlawful conduct, contract, combination and conspiracy alleged herein constitutes a *per se* unreasonable restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1 and Sections 4 and 26 of the Clayton Act;

C. That judgment be entered against Defendants, jointly and severally, and in favor of Plaintiff and the Class it represents for damages as allowed by the Sherman Act, as

1 determined to have been sustained by them, together with costs of suit, including reasonable
2 attorneys' fees;

3     D.    That Defendants, their co-conspirators, successors, transferees, assigns, parents,
4 subsidiaries, affiliates, and the officers, directors, partners, agents and employees thereof, and all
5 other persons acting or claiming to act on behalf of Defendants, or in concert with them, be
6 permanently enjoined and restrained from, in any manner, directly or indirectly, continuing,
7 maintaining or renewing the combinations, conspiracy, agreement, understanding or concert of
8 action, or adopting or following any practice, plan, program or design having a similar purpose
9 or effect in restraining competition;

10    E.    That the Court award Plaintiff and the Class it represents attorneys' fees and
11 costs, and pre-judgment and post-judgment interest as permitted by law; and

12    F.    That the Court award Plaintiff and the Class it represents such other and further
13 relief as may be necessary and appropriate.

## JURY DEMAND

Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

Dated: March 17, 2008        By: */s/ Mario N. Alioto*
Mario N. Alioto (56433)
Lauren C. Russell (241151)
**TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: malioto@tatp.com ;
laurenrussell@tatp.com

Joseph M. Patane (72202)
**LAW OFFICES OF JOSEPH M. PATANE**
2280 Union Street
San Francisco, CA 94123
Telephone: (415) 563-7200
Facsimile: (415) 346-0679
E-mail: jpatane@tatp.com

Lawrence G. Papale (67068)
**LAW OFFICES OF LAWRENCE G. PAPALE**
1308 Main Street #117
St. Helena, CA 94574
Telephone: (707) 963-1704
Facsimile: (707) 963-0706
E-mail: lgpapale@papalelaw.com

*Attorneys for Plaintiff Marin Scotty's Market, Inc.*